**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

**BAER, C.J., SAYLOR, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 17 EAP 2021 |
| | : | |
| Appellant | : | Appeal from the Judgment of |
| | : | Superior Court entered on 9/4/2020 |
| | : | at No. 148 EDA 2020 Quashing the |
| v. | : | appeal from the order entered on |
| | : | 12/30/2019 in the Court of Common |
| | : | Pleas, Philadelphia County, Criminal |
| RYAN POWNALL, | : | Division at No. CP-51-CR-0007307- |
| | : | 2018. |
| Appellee | : | |
| | : | ARGUED: December 7, 2021 |

## OPINION

**JUSTICE DOUGHERTY**                                    **DECIDED: July 20, 2022**

This case concerns the tragic death of David Jones. Appellee Ryan Pownall, a (former) Philadelphia Police Officer, is charged with killing Jones by gunfire while on duty in his capacity as a police officer. Anticipating Pownall might pursue at trial a peace officer justification defense under 18 Pa.C.S. §508 (setting forth circumstances in which a peace officer's use of deadly force while making an arrest is not a crime), the Philadelphia District Attorney's Office ("DAO"), on behalf of the Commonwealth, filed a pretrial motion in limine seeking to preclude the trial court from using Suggested Standard Jury Instruction (Crim) §9.508B, which largely tracks Section 508.[1] The DAO argued that since the justification statute supposedly violates the Fourth Amendment to the United States Constitution as interpreted by the Supreme Court in *Tennessee v. Garner*, 471 U.S. 1 (1985), so too must

---

[1] We provide the text of these authorities *infra* at 5 & n.9, respectively.

the standard jury instruction based on the statute. The trial court disagreed. It concluded the DAO's pretrial motion, by itself, was "insufficient to establish the unconstitutionality of Section 508[.]" Trial Court Op., 12/30/2019 at 3. Moreover, the court believed the DAO's suggested remedy — proposing that it rewrite several disjunctive "ors" within the statute to conjunctive "ands" — was an "inappropriate" request for it to "judicially usurp the legislative function of the Pennsylvania General Assembly and rewrite Section 508 out of whole cloth." *Id.* For those reasons it denied the DAO's request to certify the case for interlocutory appeal. When the DAO appealed anyway, the Superior Court quashed, reasoning the trial court's order was not collateral and did not substantially handicap or terminate the DAO's prosecution. We granted review to determine whether the Superior Court erred in quashing the appeal. Because we conclude it did not, we affirm.

## I. Background

We begin by emphasizing this is an interlocutory Commonwealth[2] appeal of a **pretrial** order. As such, there are few uncontested facts presently before us regarding

---

[2] Throughout this opinion we generally refer to "the DAO" instead of "the Commonwealth." We do this because the DAO's principal argument is that "Section 508(a)(1) is facially unconstitutional." DAO's Reply Brief at 1. Our rules do not contemplate this situation. Ordinarily, when a party in a case "draws in question the constitutionality of any statute" it must "give immediate notice in writing to the Attorney General[.]" Pa.R.A.P. 521(a). This rule recognizes the fact that the Attorney General is "the chief law enforcement officer of the Commonwealth[,]" 71 P.S. §732-206(a), and is statutorily charged with "uphold[ing] and defend[ing] the constitutionality of all statutes[.]" 71 P.S. §732-204(a)(3). Significantly, though, Rule 521 requires notice to the Attorney General only when "the Commonwealth or any officer thereof . . . is not a party[.]" Pa.R.A.P. 521(a). The obvious implication of the rule is that when a county district attorney prosecutes a case "in the name of the Commonwealth," 16 P.S. §1402(a), he or she assumes this duty to defend a challenged statute's constitutionality and no notice to the Attorney General is needed. Here, the DAO takes the exact opposite stance: not only does it decline to uphold Section 508's constitutionality, it leads the charge against it. In this unusual circumstance, and in the absence of any indication the Attorney General has been given notice of the DAO's claimed facial attack to Section 508's constitutionality, we find it prudent to refer to the DAO's position as its own rather than attribute it to the Commonwealth.

the underlying incident, and it would be improper for us to comment on evidence that may or may not eventually be introduced should this matter reach trial. All we can say for certain in this posture is that on June 8, 2017, Jones was killed by gunfire following an incident involving Pownall. At some later point, the DAO submitted the matter to the Twenty-Ninth Philadelphia County Investigating Grand Jury, which eventually issued a presentment recommending Pownall be charged with criminal homicide, possession of an instrument of crime, and recklessly endangering another person.[3] On September 4, 2018, the DAO charged Pownall in a criminal complaint with the latter two crimes; it also charged third-degree murder under 18 Pa.C.S. §2502(c). It then sought to bypass a preliminary hearing. Over Pownall's objection, which was grounded in the plain text of Section 4551(e) of the Investigating Grand Jury Act,[4] the Honorable Robert J. Coleman granted the DAO's bypass motion on October 11, 2018 and bound the case over for trial on the charges listed in the criminal complaint.

The case was assigned to the Honorable Barbara A. McDermott who scheduled it for a trial date of January 6, 2020. On April 1, 2019, Pownall filed a motion for change of venue or venire, which the DAO opposed. After conducting two mock jury selections over the span of several months to test whether Pownall could receive a fair trial in Philadelphia, the trial court concluded he could. Thus, on November 24, 2019, it denied his motion. *See* N.T. 11/25/2019 at 22.

---

[3] 18 Pa.C.S. §2501, §907, and §2705. Parenthetically, we note that although Section 2501 addresses criminal homicide generally, the actual criminal offenses for the various degrees of murder are set forth in 18 Pa.C.S. §2502, not Section 2501. Likewise, the remaining two species of criminal homicide, voluntary manslaughter and involuntary manslaughter, are provided in 18 Pa.C.S. §2503 and §2504, respectively.

[4] *See* 42 Pa.C.S. §4551(e) ("When the attorney for the Commonwealth proceeds on the basis of a presentment, a complaint shall be filed and **the defendant shall be entitled to a preliminary hearing** as in other criminal proceedings.") (emphasis added).

Also on that date — which was only a little more than a month before trial was set to begin, yet "more than a year and two months after [Pownall]'s arrest . . . and more than two years and five months after" Jones's death, Trial Court Op., 1/2/2020 at 2 n.2 — the DAO informed the trial court and Pownall that it intended to file a motion seeking to bar use of the suggested standard jury instruction relative to the peace officer justification defense. According to Assistant District Attorney Tracy Tripp, the intent behind the DAO's forthcoming motion was

> not to bar [Pownall] from a defense because I don't think that is allowable or appropriate. But I do feel as though — and we, the [DAO], feel as though the law itself is unconstitutional. It is a request for a decision on the constitutionality of certain prongs of 508A1, and also for the jury instructions in light of that. But I don't think it impacts the defense.

N.T. 11/25/2019 at 8. ADA Tripp asserted the DAO's motion would merely provide "two alternatives for possible jury instructions . . . [b]ecause, again, I think you get into dicey territory, if the Commonwealth is trying to tell a defendant or defense counsel what they can and can't argue as defenses." *Id.* at 24.

The DAO filed its motion in limine later that day. Therein, it expressed its belief that "justification under section 508(a)(1) will be a trial issue" and submitted that "a pre-trial determination of an issue related to the Pennsylvania Suggested Standard Jury Instruction for section 508 is necessary to prevent protracted mid-trial litigation." Motion in Limine, 11/25/2019 at 2. More precisely, the DAO asked the trial court to

> refrain from giving the Pennsylvania Suggested Standard Criminal Jury Instruction regarding section 508 because it is unconstitutional under the Fourth Amendment to the United States Constitution, as interpreted by the United States Supreme Court, and equally unconstitutional under Article 1, Section 8 of the Pennsylvania Constitution.[5] The [DAO] contends that when section 508 is read in light of controlling and persuasive Fourth Amendment jurisprudence regarding deadly force used in the apprehension

---

[5] The DAO later clarified "the relevant analysis under the Fourth Amendment is coterminous with any analysis under Article I, Section 8 of the Pennsylvania Constitution." Motion in Limine, 11/25/2019 at 10 n.3.

of criminal suspects, that section's confusing conjunctive and disjunctive clauses result in clearly untenable justifications for the use of such deadly force.

*Id.* at 3.

To contextualize the DAO's arguments pertaining to Section 508, we turn briefly to the statute. It states:

**(a) Peace officer's use of force in making arrest.--**

(1) A peace officer, or any person whom he has summoned or directed to assist him, need not retreat or desist from efforts to make a lawful arrest because of resistance or threatened resistance to the arrest. He is justified in the use of any force which he believes to be necessary to effect the arrest and of any force which he believes to be necessary to defend himself or another from bodily harm while making the arrest. However, he is justified in using deadly force only when he believes that such force is necessary to prevent death or serious bodily injury to himself or such other person, or when he believes both that:

(i) such force is necessary to prevent the arrest from being defeated by resistance or escape; and

(ii) the person to be arrested has committed or attempted a forcible felony or is attempting to escape and possesses a deadly weapon, or otherwise indicates that he will endanger human life or inflict serious bodily injury unless arrested without delay.

18 Pa.C.S. §508.

This text provides four circumstances in which a police officer's use of deadly force while making an arrest is justified. First, when the officer reasonably believes "such force is necessary to prevent death or serious bodily injury to himself or such other person[.]" *Id.* at (a)(1).[6] Second, when the officer reasonably believes "such force is necessary to prevent the arrest from being defeated by resistance or escape" and "the person to be

---

[6] The word "reasonable" does not appear in this portion of the statute. But, Section 501 instructs that the words "believes" and "belief" as used in Chapter 5 of the Crimes Code — where the peace officer justification defense resides — mean "reasonably believes" or "reasonable belief." 18 Pa.C.S. §501. We therefore substitute this definition for clarity.

arrested has committed or attempted a forcible felony[.]" *Id.* at (a)(1)(i)-(ii). Third, when the officer reasonably believes "such force is necessary to prevent the arrest from being defeated by resistance or escape" and "the person to be arrested . . . is attempting to escape and possesses a deadly weapon[.]" *Id.* And fourth, when the officer reasonably believes "such force is necessary to prevent the arrest from being defeated by resistance or escape" and "the person to be arrested . . . indicates that he will endanger human life or inflict serious bodily injury unless arrested without delay[.]" *Id.*

Returning to the DAO's motion in limine, it detected no constitutional infirmity with respect to the first or fourth scenarios presented above. But it strongly contested the constitutionality of the other two, which we will refer to as the "forcible felony" and "deadly weapon" justifications. The DAO's grievance with those specific justifications was based on its interpretation of *Garner*'s impact on substantive state criminal laws like Section 508. So, to add still more context, we now examine *Garner*.

*Garner* was decided nearly twelve years after Section 508 became effective. In that case, Edward Garner's father filed an action in federal district court seeking damages under 42 U.S.C. §1983 for asserted violations of Garner's constitutional rights committed by Memphis Police Officer Elton Hymon. Late in the evening on October 3, 1974, Hymon and another officer responded to a "prowler inside" call. When they arrived, a neighbor gestured toward the house in question and informed the officers she heard glass shatter and believed the house was being burglarized. Hymon approached the rear of the house, where he heard a door slam and saw someone run across the backyard. The suspect, Garner, stopped at a six-foot-high chain link fence at the edge of the yard. Hymon shined his flashlight at Garner — a fifteen-year-old who was 5'4" tall and weighed roughly 100 pounds — and saw no sign of a weapon. Hymon then called out "police, halt" and took a few steps forward, but Garner began to climb the fence. Convinced Garner would elude

capture if he made it over, Hymon shot him in the back of the head, killing him. Ten dollars and a purse taken from the house were found on Garner's body.

Hymon's use of deadly force to prevent Garner's escape was authorized by a Tennessee statute and a Memphis Police Department policy. The statute provided that "[i]f, after notice of the intention to arrest the defendant, he either flee or forcibly resist, the officer may use all the necessary means to effect the arrest." TENN. CODE ANN. §40-7-108 (former). The Police Department policy, though slightly more restrictive than the statute, still allowed the use of deadly force in cases of burglary. As a result, neither criminal nor administrative action was taken against Hymon for killing Garner.

With respect to Garner's father's civil suit, the district court found Hymon's actions to be authorized by the Tennessee statute. The Sixth Circuit Court of Appeals agreed Hymon had acted in good-faith reliance on the statute and was therefore within the scope of his qualified immunity. However, it reversed the district court's dismissal of claims against the City of Memphis. Relevant here, it reasoned the killing of a fleeing suspect is a seizure under the Fourth Amendment, meaning it is constitutional only if reasonable.[7] In this instance, the Sixth Circuit concluded, the facts as found did not justify the use of deadly force against Garner under the Fourth Amendment.

The State of Tennessee subsequently intervened to defend the statute and sought *certiorari* before the United States Supreme Court, which was granted. On its review, the High Court affirmed. Initially, it held "there can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." *Garner*, 471 U.S. at 7; *see id.* at 8 ("it is plain that reasonableness depends

---

[7] "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV.

on not only when a seizure is made, but also how it is carried out"). The Court continued: "To determine the constitutionality of a seizure we must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Id.* (internal quotations, brackets, and citations omitted). It then looked to other situations in which it had conducted a similar balancing and resolved that, even if an officer has "probable cause to seize a suspect, [he] may not always do so by killing him." *Id.* at 9.

In reaching this conclusion, the Court explained that on one side of the scale is the "interest of the individual, and of society, in judicial determination of guilt and punishment." *Id.* Also on that side is a "suspect's fundamental interest in his own life" which, the Court pointedly remarked, "need not be elaborated upon." *Id.* Meanwhile, on the other side of the scale is a range of "governmental interests in effective law enforcement[,]" including a goal of reducing overall violence by encouraging peaceful submission. *Id.* Ultimately, however, the Court concluded that despite the importance of these legitimate objectives, effectuating a seizure by use of deadly force — the intrusiveness of which "is unmatched" — is "a self-defeating way of apprehending a suspect and so setting the criminal justice mechanism in motion." *Id.* at 9-10. In other words, the Court was not persuaded "that shooting nondangerous fleeing suspects is so vital as to outweigh the suspect's interest in his own life." *Id.* at 11.

Two additional paragraphs from *Garner* warrant discussion. The first because it forms the crux of the DAO's constitutional argument; the second because the DAO mostly ignores it notwithstanding its clear relevance to the DAO's claim. Starting with the DAO's preferred paragraph, it states:

> The use of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable. It is not better that all felony suspects die than that they escape. **Where the suspect poses no immediate threat to the officer and no threat to**

**others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so**. It is no doubt unfortunate when a suspect who is in sight escapes, but the fact that the police arrive a little late or are a little slower afoot does not always justify killing the suspect. **A police officer may not seize an unarmed, nondangerous suspect by shooting him dead**. The Tennessee statute is unconstitutional insofar as it authorizes the use of deadly force against such fleeing suspects.

*Id.* (emphasis added). The second paragraph, which immediately follows the first, provides:

> It is not, however, unconstitutional on its face. Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given. As applied in such circumstances, the Tennessee statute would pass constitutional muster.

*Id.* at 11-12.

Focusing on the first paragraph above (the bolded parts in particular), and relating it back to Section 508, the DAO argued the forcible felony justification "is unconstitutional because the available definition of 'forcible felony' is too broad, and includes felonies that, under *Garner*, would not warrant deadly use of force." Motion in Limine, 11/25/2019 at 9. The DAO recognized the term "forcible felony" is not defined in the Crimes Code, but it looked to the subcommittee note for Suggested Standard Jury Instruction (Crim) §9.508B, which states:

> Subparagraph 3.b(1) of subdivision 3.b is based on the first clause of Crimes Code section 508(a)(1)(ii), which uses the term "forcible felony," a term not defined in the code. The trial judge should specify the particular crime involved, again depending on the evidence. The term "forcible felony" (and thus the applicability of this subparagraph of the instruction) appears to be limited to the felonies involving some element of force that are enumerated in the note to Instruction 9.508E.

Pa. SSJI (Crim) §9.508B, Subcommittee Note.

Based on the final sentence in this passage, the DAO naturally went searching for the list of "felonies involving some element of force that are enumerated in the note to Instruction 9.508E." *Id.* But, as it turns out, no such list exists there. Nor are there any felonies "enumerated" in Instruction 9.508E itself (as opposed to within its note). So, the DAO instead seized other language from that Instruction referencing crimes involving or threatening "bodily injury," "damage to or loss of property," or a "breach of the peace[.]" Pa. SSJI (Crim) §9.508E. Assuming those must be the terms that define the bounds of a "forcible felony" as understood by Section 508, the DAO challenged them as "too broad to comport with *Garner*[.]" Motion in Limine, 11/25/2019 at 9.

Turning to the deadly weapon justification, the DAO found it "even more broad than the 'forcible felony' scenario, and even more out of step with constitutional requirements." *Id.* (emphasis omitted). The DAO contended it allows "police officers to kill anyone — regardless of whether they are suspected of committing a felony, misdemeanor, or even an arrestable summary offense — who attempts to escape from arrest and happens to possess a 'deadly weapon[.]'" *Id.* at 10. This theoretical possibility, the DAO alleged, "blatantly violates the Fourth Amendment's prohibition against the use of deadly force against misdemeanants." *Id.* at 10-11 (citation omitted).[8]

More broadly, the DAO asserted its view that "[w]eapon possession does not by itself create a fair inference that a suspect creates the requisite danger demanded by the *Garner* Court." *Id.* at 11. Rather, it argued *Garner* requires "some indication that the suspect created an objectively reasonable belief that he or she threatens the life or limb of the officer or others unless arrested without delay." *Id.* (citation omitted). If the law

---

[8] We observe that on the next page of its motion the DAO undermined, if not plainly contradicted, its own argument in this respect. *See* Motion in Limine, 11/25/2019 at 12 (clarifying it "does not suggest that a misdemeanant cannot ever create a threat that necessitates a police officer's use of deadly force").

was otherwise, the DAO feared the statute could permit the killing of fleeing suspects who merely possess any item recognized as a "deadly weapon" under Pennsylvania case law, which includes "knives, blackjacks, mace, mouse poison, and cars." *Id.* at 10 (footnoted citations omitted).

Believing it had identified potential ways in which Section 508's forcible felony and deadly weapon justifications could be applied in an unconstitutional manner, the DAO went on to offer a proposed remedy. To that end, it advised that "chang[ing] the offending 'ors' to 'ands' would bring Section 508(a)(1)(ii) within the relevant Fourth Amendment jurisprudence." *Id.* at 13. Reformulating the statute in that way "would permit officers to only use deadly force against fleeing arrestees who attempted or committed a forcible felony **and** possess a deadly weapon **and** indicate that they would endanger human life or inflict serious bodily injury unless arrested without delay." *Id.* at 16 (emphasis added). Put differently, the DAO asked the trial court to collapse three of the four independent justifications listed in Section 508 into one.

As for the corresponding suggested standard jury instruction — which, as we noted earlier, tracks Section 508[9] — the DAO similarly recommended swapping the so-called

---

[9] Suggested Standard Jury Instruction (Crim) §9.508B provides:

> 1. In this case, evidence was introduced that in preventing an arrestee from escaping, the defendant may have used what is called "deadly force," which is defined as force that was readily capable of causing death or serious bodily injury under the circumstances.
>
> 2. Special rules apply in determining whether the defense of justification is available when deadly force was used to prevent an arrestee from escaping. A person in the defendant's position need not desist from efforts to prevent the escape merely because the arrested person persists in his or her efforts to escape.
>
> 3. Furthermore, the Commonwealth has the burden of disproving the defense of justification. Thus, you cannot find the defendant guilty:

offending "ors" with nonoffending "ands." *See id.* at 20-21. Alternatively, it posited that the trial court could "simply excise the unconstitutional provisions, and squarely focus on the appropriate endangerment requirements[.]" *Id.* at 21.

Pownall opposed the DAO's motion. He found it "truly unimaginable that the most powerful[ ] elected law enforcement official in Philadelphia County would ignore the law in charging a peace officer, and then try to change the law that the peace officer had relied on in the performance of his duties." Response to Motion in Limine, 12/4/2019 at 3.[10]

---

a. unless the evidence convinces you beyond a reasonable doubt that [he] [she] did not reasonably believe that deadly force was necessary to prevent death or serious bodily injury to [himself] [herself] *[other person]*;

[b. and unless the evidence also convinces you beyond a reasonable doubt that [he] [she] did not reasonably believe either that deadly force was necessary to prevent *[name of arrested person]* from escaping or that *[name of arrested person]*:

[(1) in attempting to escape had committed or attempted to commit the crime of *[crime]*; [or]

(2) possessed a deadly weapon; [or]

(3) had indicated that [he] [she] would endanger human life or inflict serious bodily injury unless [his] [her] custody was secured without delay.]]

Pa. SSJI (Crim) §9.508B (brackets in original).

[10] Pownall's accusation about the DAO "ignoring the law" appears to refer to what occurred (or perhaps did not occur) before the Investigating Grand Jury. In a motion he filed two weeks after responding to the DAO's motion in limine, Pownall averred that

[a] careful review of the legal instructions and definitions provided to the Grand Jury indicates that the [DAO] never gave the grand jurors the definitions of Murder (of any degree), Voluntary Manslaughter, or Involuntary Manslaughter. Furthermore, they never instructed or advised the Grand Jury of [Section] 508 which sets forth the law regarding the use of permissible deadly force by a police officer[.]

On the merits Pownall made several rejoinders. First, he noted the presumption that statutes are constitutional and the high burden for overcoming that presumption. He also criticized the DAO for failing to "cite to a single binding case in support of its position." *Id.* at 4. Concerning *Garner*, Pownall stressed it was "a civil case [in which the High Court] held the [Tennessee statute] unconstitutional only 'as applied.'" *Id.* at 7 (citation omitted). Pownall argued the Supreme Court "has never and would never require the state[s] to criminalize the use of deadly force by a peace officer" in any circumstance — a conclusion reached by at least one state supreme court. *Id.* at 7-8, *citing People v. Couch*, 461 N.W.2d 683, 684 (Mich. 1990) ("*Garner* was a **civil** case which made no mention of the officer's criminal responsibility for his 'unreasonable' actions. Thus, not only is the [High] Court without authority to require this state to make shooting a nondangerous fleeing felon a **crime**, it has never even expressed an intent to do so.") (emphasis in original). Finally, Pownall raised due process and *ex post facto* concerns based on the DAO's resolve to have applied to his case a judicially altered version of Section 508 that was not in effect at the time of the underlying incident. *See id.* at 4 (asserting the DAO's "attempt to change the law after the incident runs afoul of due process"); *id.* at 7 (claiming the DAO "seeks an *ex post facto* judicial rule of law to [his] sole detriment").

The trial court, in its opinion, has provided an explanation for what happened next. The court describes how it intended to hold the DAO's motion in limine under advisement because the motion "presented an evidentiary issue which would have to be determined upon hearing the evidence presented at trial." Trial Court Op., 12/30/2019 at 1.[11] Then,

---

Motion to Quash Presentment and for Dismissal of All Charges, 12/18/2019 at 2.

[11] The subcommittee note to the relevant suggested standard jury instruction supports the trial court's inclination. *See* Pa. SSJI (Crim) §9.508B, Subcommittee Note ("the trial judge should select the material for inclusion in the charge depending on the evidence adduced at trial"); *see also* Pa.R.Crim.P. 647(B) (court need not rule on written requests for jury instructions until "[b]efore closing arguments"). Also worth mentioning is the well-

on December 23, 2019 — only days after Pownall sought to quash the presentment and dismiss all charges based on alleged grand jury irregularities, *see supra* n.10 — counsel for the parties "made an unscheduled appearance" in the trial court, at which time the DAO requested a favorable ruling on its motion in limine and asserted its intent to appeal if the motion was denied. *Id.* at 1-2. Faced with that demand, the court "elected to rule on the [DAO's motion] and explain its reasoning[.]" *Id.* at 2.

The trial court determined the DAO's motion, "on its own, is insufficient to establish the unconstitutionality of Section 508[.]" *Id.* at 3. This statement implies the court believed the DAO needed to present something more to substantiate its underlying Fourth Amendment claim — presumably meaning evidence introduced at trial that would permit Pownall to seek an instruction on the allegedly unconstitutional forcible felony or deadly weapon justifications. Along similar lines, the court expressed concern that rather than launch an actual facial challenge to the statute, the DAO had raised only hypothetical problems in the abstract, untethered to Pownall's case. *See id.* ("in lieu of arguing that the statute is plainly unconstitutional, the [DAO] suggests that the conjunctions used in that statute gives rise to an unconstitutional interpretation"). And, the court opined that "[i]rrespective of the constitutionality of the statute," the DAO's proposed remedy was "inappropriate." *Id.*; *see id.* ("This [c]ourt has no authority to summarily rewrite portions of a criminal statute, for doing so would serve only to supersede the will of the people as placed into the hands of the legislature.").

Having rejected the DAO's arguments, the trial court proceeded to suggest that any appeal taken "should be quashed." *Id.* at 4. It first asserted the DAO could not appeal under Pa.R.A.P. 311, which permits the Commonwealth to "appeal as of right from an

---

settled principle that the suggested standard jury instructions "are not binding and do not alter the discretion afforded trial courts in crafting jury instructions; rather, as their title suggests, the instructions are guides only." *Commonwealth v. Eichinger*, 108 A.3d 821, 845 (Pa. 2014).

order that does not end the entire case where [it] certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution." Pa.R.A.P. 311(d). In the trial court's view, its order denying the DAO's motion "in no way handicap[ped] the [DAO]'s ability to present evidence or terminate[d]" its prosecution, because the order was "limited only to the application of a jury instruction pertaining to [Pownall]'s possible affirmative defense." Trial Court Op., 12/30/2019 at 4; *see id.* (explaining the DAO was not prevented "from presenting its case in chief").

The trial court further stated its order did not implicate the collateral order doctrine under Pa.R.A.P. 313. That rule permits an appeal as of right from a collateral order, which is defined as "an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa.R.A.P. 313(b). From the court's perspective, the DAO could not demonstrate the order was separable from and collateral to the main cause of action because, "[b]y its very nature, the propriety and necessity of a self-defense instruction, if requested by the [d]efendant, cannot be decided without considering the evidence presented at trial and its relation to the [d]efendant's guilt." Trial Court Op., 12/30/2019 at 5.

The trial court issued its ruling and opinion on December 30, 2019. In the afternoon of the following day (New Year's Eve), the DAO filed a petition asking the court to amend its order by adding a certification permitting it to take an interlocutory appeal. *See* 42 Pa.C.S. §702(b) (trial court may in its discretion authorize appeal from an interlocutory order where it believes the order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter"). Exactly twenty minutes later, before the court conceivably could have given the request serious deliberation, the

DAO filed a notice of appeal. In its notice, the DAO certified under Rule 311(d) that the court's order terminated or substantially handicapped its prosecution of Pownall; it also invoked the collateral order doctrine under Rule 313(b).

When the court returned after the holiday it promptly issued an order and opinion denying the DAO's request to certify the case for interlocutory appeal under Section 702. The court described how none of the non-binding cases cited by the DAO in its request for certification — all of which were previously included in the DAO's motion in limine — "suggest that the current construction of Section 508 is unconstitutional, or that the statute may be interpreted to justify a peace officer's use of deadly force against a person who poses no threat to human life or safety." Trial Court Op., 1/2/2020 at 2. Thus, seeing "no basis . . . to permit an interlocutory appeal" in the absence of a controlling question of law as to which there is a substantial ground for difference of opinion, the court denied the DAO's request. *Id.* In so doing, it conveyed discontent with the DAO's decision "to wait until weeks before trial to present its motion" challenging Section 508. *Id.* at 2 n.2; *see* N.T. 1/6/2020 at 9 (indicating "frustration that this was last minute").

When the DAO's appeal reached the Superior Court, that tribunal issued a rule to show cause directing the DAO to explain why its appeal should not be quashed as interlocutory, citing Pa.R.A.P. 341(a) ("[A]n appeal may be taken as of right from any final order[.]"). The DAO responded, after which the court discharged its rule and referred the matter to the merits panel.

On September 4, 2020, the panel, through a *per curiam* order, followed the trial court's recommendation and quashed the DAO's appeal. The panel's order explained the appeal was not authorized under Pa.R.A.P. 311(d) or Pa.R.A.P. 313(b). Regarding Rule 311(d), it reasoned the trial court's order did not hinder the DAO's prosecution since it "does not exclude, suppress or preclude" any evidence. *Commonwealth v. Pownall*,

240 A.3d 905, 2020 WL 5269825 at *1 (Pa. Super. 2020) (*per curiam*). As for Rule 313(b), the panel likewise "agree[d] with the trial court's assessment that the necessity and propriety of [Pownall]'s justification defense depends upon consideration of the evidence presented at trial and therefore cannot be severed from the ultimate issue — [Pownall]'s guilt or innocence." *Id.* Consequently, the panel concluded the DAO had "failed to show that the order is a collateral order[.]" *Id.*

One other aspect of the panel's *per curiam* order is notable. Like the trial court, the panel voiced its disapproval of the DAO's request "that th[e c]ourt rewrite the statute, using conjunctive over disjunctive language." *Id.* at *1 n.1. That remedy, the panel insisted, "would infringe on legislative action and violate the doctrine of separation of powers." *Id., citing* PA. CONST. art. V, §10. As such, the panel advised the DAO its "[r]ecourse lies with the General Assembly." *Id.*

## II. Arguments & Analysis

We granted allowance of appeal to consider whether the Superior Court erred in quashing the DAO's appeal. Although we accepted review of three issues,[12] given our

---

[12] The precise questions we agreed to consider, as framed by the DAO, are:

> (1) Did the Superior Court err when it held that it did not have jurisdiction over the Commonwealth's appeal under the collateral order doctrine where the appeal raised only the facial constitutionality of a broadly applicable statute that in no way implicated the question of [Pownall's] guilt or innocence?

> (2) Did the Superior Court improperly depart from this Court's precedent by holding that the Commonwealth may invoke its right to an interlocutory appeal under Pa.R.A.P. 311(d) only where it arises from an order that excludes, suppresses, or precludes the Commonwealth's evidence?

> (3) Did the Superior Court improperly depart from this Court's precedent and the General Assembly's Rules of Statutory Construction by stating that it could not properly construe a statute to give effect [to] legislative intent?

*Commonwealth v. Pownall*, 252 A.3d 1074 (Pa. 2021) (*per curiam*).

disposition of the first two — which present pure questions of law we review *de novo*, *see Commonwealth v. White*, 910 A.2d 648, 652 n.3 (Pa. 2006) — we do not reach the final issue, in which the DAO argues the merits of its underlying Fourth Amendment claim.[13] As well, we elect to consider the first two issues in the order they were addressed by the courts below, *i.e.*, in reverse.

## A. Appealability Under Rule 311(d)

### i. Arguments

In its principal brief, the DAO argues its appeal is proper under Rule 311(d) on the basis that the trial court's order denying its motion in limine "enable[s Pownall] to evade conviction through the use of a defense that violates constitutional rights." DAO's Brief at 15. This is enough to satisfy Rule 311(d), says the DAO, because our decisional law in this arena (which we discuss below) supposedly reduces to three principles: (1) Rule 311(d) is "based on the Commonwealth's burden to prove its case beyond a reasonable doubt"; (2) "the exercise of Rule 311(d) jurisdiction is appropriate when the issue would otherwise evade review"; and (3) the rule is not limited to the suppression, exclusion, or preclusion of Commonwealth evidence. *Id.* at 19-20. Under this theory, it is irrelevant that the trial court's order has nothing to do with the evidence the DAO may present as part of its case — what matters, in the DAO's view, is that the order affects its burden of proof and involves an issue that might otherwise evade review. *See id.* at 20 (avowing order affects its burden of proof because "jury instructions based on Section 508(a)(1) would force [it] to disprove three elements, two of which are constitutionally invalid, rather than one constitutional element").

---

[13] *Amicus curiae* briefs have been filed in support of both parties. We do not discuss them because none addresses the dispositive jurisdictional questions.

Pownall responds that the language of Rule 311(d) and our decisions interpreting it permit the Commonwealth to take an interlocutory appeal only "where the trial court's order terminates or substantially handicaps its prosecution or has the practical effect of doing so." Pownall's Brief at 29. Here, he submits, the DAO "has failed to explain how the order terminates or substantially handicaps its prosecution[.]" *Id.* at 28; *see id.* at 29 (the DAO "has not and cannot establish how the trial court's order refusing to modify the language of a jury instruction that may not even be warranted in this case terminates or substantially handicaps its prosecution"). He observes the only hindrance alleged by the DAO is the possibility "that the trial court's order makes it more difficult to satisfy its burden of proof[.]" *Id.* at 28. However, citing another of our cases, Pownall asserts we have "already rejected the claim that the Commonwealth may file an interlocutory appeal any time a trial court issues an order that might potentially affect its ability to meet its burden of proof." *Id.* at 26, *citing Commonwealth v. Shearer*, 882 A.2d 462 (Pa. 2005).

In its reply brief, the DAO appears to partially retreat from its original position. Confronted with the case cited by Pownall, it now concedes Rule 311(d) "does not permit an appeal in every case where the order implicates the Commonwealth's ability to meet its burden of proof." DAO's Reply Brief at 13. Instead, the DAO argues its "interest in proving its case must be balanced with a defendant's right to present his chosen evidence — a right not at issue here." *Id.* (emphasis omitted). It then reiterates its belief that the trial court's order substantially handicaps its prosecution "by forcing it to disprove multiple justification defenses, two of which unconstitutionally immunize" Pownall. *Id.*

ii. Analysis

We have previously traced the history of Rule 311(d), which emanates from our decision in *Commonwealth v. Bosurgi*, 190 A.2d 304 (Pa. 1963). In that case, we "found that a pretrial suppression order which terminates or handicaps the prosecution has 'such

an attribute of finality as to justify the grant of the right of appeal to the Commonwealth.'" *Commonwealth v. Cosnek*, 836 A.2d 871, 874 (Pa. 2003), *quoting Bosurgi*, 190 A.2d at 308; *see Commonwealth v. Dugger*, 486 A.2d 382, 386 (Pa. 1985) (the Commonwealth may "appeal from a [non-]final order when [it] certifies in good faith that the suppression order terminates or substantially handicaps its prosecution"). In time, this "terminates or substantially handicaps" language made its way into Rule 311 via an amendment that became effective on July 6, 1992. *See Cosnek*, 836 A.2d at 874.

Since then, "this Court has taken a fairly categorical approach to the application of Rule 311(d)." *In re Twenty-Fourth Statewide Investigating Grand Jury*, 907 A.2d 505, 515 (Pa. 2006). For example, "[t]he classic case of an interlocutory order appealable by the Commonwealth as of right . . . is one granting a defense motion to suppress evidence." *Commonwealth v. Boczkowski*, 846 A.2d 75, 87 (Pa. 2004) (citation omitted). This category covers all types of orders resulting in the suppression or exclusion of Commonwealth evidence. *See Commonwealth v. Gordon*, 673 A.2d 866, 868 (Pa. 1996) (finding "no essential difference between suppression rulings and rulings on motions in limine" that exclude evidence). And it includes orders that have "the practical effect" of suppressing or excluding evidence. *See Commonwealth v. Matis*, 710 A.2d 12, 18-19 (Pa. 1998) (pretrial order denying the Commonwealth's motion for a continuance to secure the presence of necessary witness was "sufficiently similar to a suppression order to justify an appeal"). At the same time, we have held as a categorical matter that "the Commonwealth's right to interlocutory appeals does not extend to appealing the admission of **defense** evidence." *Cosnek*, 836 A.2d at 876 (emphasis added); *see id.* (allowing Commonwealth to appeal rulings admitting defense evidence would force the accused "to balance his right to a trial without delay with his fundamental right to present

evidence"; "[t]he chilling effect of such a choice would give the Commonwealth an unwarranted and unfettered influence over the defense case").

Although in *Cosnek* we seemed to imply Rule 311(d) is "limit[ed]" to pretrial rulings resulting "in the suppression, preclusion or exclusion of Commonwealth evidence[,]" *id.* at 877, two years later we clarified that statement in *Shearer*, *supra*. There, we explained *Cosnek* simply "made clear that the application of Rule 311(d) **in the suppression context** is limited to circumstances in which a pretrial ruling results in the suppression, preclusion or exclusion of Commonwealth evidence." 882 A.2d at 467 (internal quotations and citation omitted; emphasis added). We expounded there are "other types of orders that *Cosnek* did not address, but which may also be appealable under Rule 311(d)." *Id.* at 466 n.6 (citations omitted). Indeed, this insight was borne out in several decisions where we held appealable other kinds of orders that did not implicate the loss of evidence. *See, e.g.*, *In re Twenty-Fourth Statewide Investigating Grand Jury*, 907 A.2d at 515 ("disclosure orders concerning the subject of a grand jury investigation are a type of order relating to a potential criminal prosecution that should be appealable as of right"); *White*, 910 A.2d at 659 (order denying Commonwealth's request to invoke its constitutional right to a jury would "hamper the presentation of its case" where the trial court had denied a motion to recuse and the Commonwealth alleged "it will be forced to proceed before a judicial fact-finder who is biased against it");[14] *Commonwealth v. Karetny*, 880 A.2d 505, 513 (Pa. 2005) (order quashing some though not all offenses "quite definitively terminates

---

[14] The DAO directs us to parts of *White* that commanded only a plurality of the Court, including a line purporting to overrule *Cosnek*. *See* DAO's Brief at 19. Among other things, those parts sought to resurrect the plurality author's dissenting position in *Cosnek*, which advocated a literal reading of Rule 311(d) that would permit a Commonwealth appeal as of right whenever the Commonwealth certifies in good faith "that a pretrial ruling substantially hampers the case[.]" *Cosnek*, 836 A.2d at 884 (Eakin, J., dissenting). Because this Court has never adopted that literal view of Rule 311(d), the portion of *White* cited by the DAO is of little relevance here.

the prosecution as to the quashed charge" and "imposes a handicap that the prosecution cannot overcome") (internal quotations and citation omitted).

This case concerns a new type of order we have yet to address: one denying a pretrial Commonwealth motion in limine seeking to preclude the trial court's use of a suggested standard jury instruction (or, as the DAO now portrays it, a facial attack to the statute upon which that instruction is based). Because such an order does not concern the suppression of evidence or fit neatly within any of the other discrete categories that we have held are appealable as of right by the Commonwealth, we must rely on the rule's plain language to determine whether the order "terminate[s] or substantially handicap[s]" the DAO's prosecution of Pownall. Pa.R.A.P. 311(d). We conclude it does not.

The DAO rightfully declines to go so far as to say the trial court's order pertaining to jury instructions somehow "terminates" its case, so we can rule that out immediately. What remains is the DAO's sole argument that the order substantially handicaps its prosecution because the order "directly concerns [its] burdens of proof at trial[.]" DAO's Brief at 20; *see id.* ("jury instructions based on Section 508(a)(1) would force the [DAO] to disprove three elements, two of which are constitutionally invalid, rather than one constitutional element"). On this front, however, we agree with Pownall that the DAO's argument is foreclosed by our decision in *Shearer*.

In *Shearer*, the Commonwealth took an interlocutory appeal from "a pretrial order granting [the defendant's] request to compel the minor complainant to submit to a psychological exam for the purpose of aiding the trial court in determining whether [he] was competent to testify." 882 A.2d at 464. The Commonwealth argued its appeal was proper under Rule 311(d) on the ground its case would be "over if the trauma inflicted on the child results in his being unwilling or unable to cooperate or testify, or otherwise results in or contributes to a defense verdict." *Id.* at 468 (internal quotations, brackets, and

citation omitted). We disagreed. Notably, we flatly rejected the Commonwealth's "assertion that it should always be permitted to appeal any pretrial order that has the potential to affect its ability to meet its burden of proof." *Id.* at 467. In our view, the claimed handicap was founded on nothing more than the Commonwealth's "speculation regarding the potential effects of the order[.]" *Id.* at 468. That, we held, "simply does not suffice to establish" an order's appealability under Rule 311(d). *Id.*

This appeal faces the same problem. The only complaint the DAO makes about the trial court's order is that it ostensibly "forc[es the DAO] to disprove multiple justification defenses, two of which unconstitutionally immunize [Pownall] from murder charges arising from the killing of any fleeing forcible felon or armed suspect." DAO's Reply Brief at 13. Even assuming for the moment that the DAO is correct about its constitutional claim, it is impossible to know in this pretrial posture whether the DAO will actually be forced to disprove anything. That could only theoretically occur if, at trial, some evidence is produced that would implicate Pownall's ability to invoke the peace officer justification defense in the first place. *See generally Commonwealth v. Capitolo*, 498 A.2d 806, 809 (Pa. 1985) (defendant entitled to instruction on justification as defense to crime charged only where evidence is offered to support it).

In fact, though, such evidence alone would not be enough. To trigger the DAO's hypothetical concerns, there would also have to be specific evidence that would permit the trial court, if it so chose in its discretion, to use the suggested standard jury instruction on the forcible felony or deadly weapon justifications exactly as written. And, even then, the DAO still might not have to disprove what it calls an "unconstitutional defense"[15] depending on the evidence that is introduced. DAO's Brief at 10. This is because the

---

[15] We observe this characterization, among others, from the DAO's brief appears to refute ADA Tripp's assertion that the DAO's motion was not intended "to bar [Pownall] from a defense[.]" N.T. 11/25/2019 at 8; *see id.* ("I don't think it impacts the defense.").

DAO alleges only that in some factual circumstances the use of the forcible felony or deadly weapon justifications could — though not always, and maybe not even in this case — result in "unconstitutional situations." *Id.* at 21; *see* DAO's Reply Brief at 18 (conceding in some cases "a suspect's prior felony can [ ] be grounds for deadly force"); *id.* at 21 (admitting if a suspect possessed a deadly weapon that could be used to cause death or serious bodily injury "there would be no constitutional problem").

As we see it, the DAO's asserted substantial handicap is constructed on layer after layer of speculation and "what ifs." Rule 311(d) requires more. As discussed, in every case in which we have permitted a Commonwealth appeal as of right, the order appealed from had a tangible or practical effect on the Commonwealth's actual ability to prosecute its case.[16] In contrast, a challenge to a suggested standard jury instruction — the use of which is left entirely to the discretion of the trial court, and would be appropriate only if supported by evidence adduced at trial in any event — cannot reasonably be said to handicap the prosecution in any way. Indeed, such an issue does not truly ripen until the Commonwealth has already rested its case and the evidentiary record has closed. Thus, we decline to recognize a new categorical Commonwealth appeal as of right under Rule 311(d) whenever the Commonwealth seeks to challenge the use of a jury instruction, even if such attack is constitutional in nature.

---

[16] As the review of our cases regarding Rule 311(d) makes clear, we have never held the rule is satisfied merely when an order might "enable [a] defendant to evade conviction" or alter the Commonwealth's "burden to prove its case beyond a reasonable doubt." DAO's Brief at 15, 19. Similarly, there is no support for the DAO's position that Rule 311(d) appeals are subject to a balancing test and that a defendant must identify some interest that would weigh against the Commonwealth's claimed need to appeal. *See* DAO's Reply Brief at 13. Nor have we ever said Rule 311(d) jurisdiction is appropriate solely when the issue might "otherwise evade review." DAO's Brief at 20.

### B. Appealability Under Rule 313(b)

#### i. Arguments

We now turn to the collateral order doctrine. The doctrine "permits an appeal as of right from a non-final collateral order if the order satisfies the three requirements set forth in Rule 313(b) — separability, importance, and irreparability." *Shearer v. Hafer*, 177 A.3d 850, 858 (Pa. 2018) ("*Hafer*"). Here, the DAO argues it has met all three prongs. Starting with the second, it tersely proclaims that "whether Pennsylvania law permits police officers to take a life in violation of the Fourth Amendment is, without a doubt, an issue too important to be denied review." DAO's Brief at 11. As for the third requirement, the DAO submits its claim would be irreparably lost if review were postponed until final judgment, because if Pownall "is acquitted, the [DAO] may not appeal"; if he "is convicted, the [DAO] likewise could not appeal because it would not be an aggrieved party." *Id.* at 12. It therefore believes "an interlocutory appeal is the only possible way for the constitutionality of Section 508(a)(1) to ever receive appellate review." *Id.*

With respect to separability, the first prong, the DAO forthrightly "acknowledges that the trial court's instructions on [Pownall]'s justification defense will likely impact the outcome of trial." *Id.* at 14. Nevertheless, it insists that just because "the outcome of trial may hinge on these questions does not mean they concern the issue of guilt itself." *Id.* The DAO takes the position that "while [Pownall]'s conviction or acquittal might turn on the outcome of this appeal, the constitutionality of Section 508(a)(1) does not turn on, or ever consider, whether or not [Pownall] is guilty." *Id.*; *see id.* at 14-15 (characterizing its underlying issue as one of mere "statutory construction that is separable from and agnostic to [Pownall]'s guilt or innocence").

For his part, Pownall claims the trial court's order "did not satisfy any of the prongs required by Rule 313(b), let alone all of them[.]" Pownall's Brief at 14 (emphasis omitted).

Presenting his answers in the same order the DAO approached the rule's tripartite test, Pownall argues the DAO's "effort to satisfy the second requirement of [Rule] 313(b) by reframing the issue as one involving application of the Fourth Amendment's protections against unlawful seizure must be rejected" because "this was not the issue [it] presented to the trial court." *Id.* at 19. Instead, Pownall says, the DAO's argument in the trial court was "that the conjunctive language used in [Section] 508 gave rise to an unconstitutional interpretation of the statute that could be remedied by changing the wording of the statute" — not that the statute and its attendant jury instruction are facially unconstitutional under the Fourth Amendment. *Id.* Next, Pownall deems as "simply untrue" the DAO's allegation that an interlocutory appeal is the only possible way for the constitutionality of Section 508 to receive appellate review. *Id.* at 20. He offers two possible alternatives to an interlocutory appeal that he believes would allow for review of Section 508's constitutionality: a mandamus action aimed at the trial court related to its use of the suggested standard jury instruction, and a civil damages action under 42 U.S.C. §1983, which, he remarks, is "precisely what happened in" *Garner*. *Id.* at 21.

Pertaining to Rule 313(b)'s separability requirement, Pownall stresses the main issue in the case is whether he "committed murder or whether his use of deadly force was legally justified under the circumstances — which would provide a complete defense to the charge of murder." *Id.* at 15. Given that, he believes the trial court's order "thoroughly implicates the merits of the underlying defense." *Id.* In this regard, Pownall agrees with the lower courts that "the question of whether [Section] 508 even applie[s] to" his case cannot "be considered without an analysis of the underlying facts and evidence in the case." *Id.* at 18.

Curiously, the DAO responds that "Section 508's applicability to [Pownall] is not the subject of this appeal." DAO's Reply Brief at 6. It insists no "factual analysis is

required here, where only the legality of the justification generally, not whether it can be asserted by [Pownall], is at issue." *Id.* at 7; *see id.* at n.1 ("Neither [Pownall]'s ability to claim self-defense nor the evidence he may present to do so are at issue here."). The DAO also disputes the relevance of the way it presented its claim below. In its view, "an argument that Section 508 gives rise to an unconstitutional interpretation of the statute is one and the same with an assertion that the statute is unconstitutional." *Id.* at 8 (internal quotations omitted). Finally, the DAO disagrees with Pownall that mandamus or a civil suit would "provide an avenue for review of the claim at issue now." *Id.* at 12.

ii. Analysis

We "construe the collateral order doctrine narrowly, and insist that each one of its three prongs be clearly present before collateral appellate review is allowed." *Hafer*, 177 A.3d at 858 (internal quotations and citation omitted). This approach avoids undue corrosion of the final order rule and prevents delay resulting from piecemeal review of trial court decisions. *See id.* It also recognizes a party "may seek allowance of appeal from an interlocutory order by permission" under Pa.R.A.P. 312, and that this "process would be undermined by an overly permissive interpretation of Rule 313." *Id.*[17]

As regards the doctrine's three prongs, we need only address the first concerning separability. We have held an order is separable from the main cause of action in a case only "if it can be resolved without an analysis of the merits of the underlying dispute." *Commonwealth v. Williams*, 86 A.3d 771, 781 (Pa. 2014). "Stated differently, an order is

---

[17] Earlier, we noted the trial court declined to authorize an immediate permissive appeal. We add that the DAO could have pursued review of that decision, but nothing in the record suggests it did. *See* Pa.R.A.P. 1311, Note (explaining that at the time relevant here, "an order refusing to certify an order as meeting the requirements of 42 Pa.C.S. §702(b) was reviewed by filing a petition for review under Chapter 15"). This available but neglected procedural avenue refutes the dissent's assertion that "the only circumstance in which an appellate court ever could assess a Commonwealth challenge to the meaning or the constitutional validity of a statutory defense would occur if a trial court certifies the order denying relief for immediate pretrial appeal." Dissenting Op. at 3-4.

separable if it is 'entirely distinct' from the underlying issue in the case.'" *Commonwealth v. Blystone*, 119 A.3d 306, 312 (Pa. 2015) (citation omitted). Although some slight interrelatedness between the merits and the issue to be raised on interlocutory appeal is tolerable, "the claim must nevertheless be conceptually distinct from the merits[.]" *Id.* (internal quotations and citation omitted). When it comes to criminal trials, the underlying dispute is whether the defendant "committed the crimes charged[.]" *Shearer*, 882 A.2d at 469. Thus, to assess separability in this context, we ask whether "resolution of th[e] issue can be achieved independent from an analysis of whether [the defendant] is guilty[.]" *Commonwealth v. Kennedy*, 876 A.2d 939, 943 (Pa. 2005); *see Shearer*, 882 A.2d at 469 (relevant inquiry is whether issue can be resolved without considering defendant's "potential guilt or innocence of the crimes charge[d]").

We conclude it is impossible to separate the DAO's claim — whether construed as a challenge to the suggested standard jury instruction, or as a facial or as-applied attack on the statute upon which the instruction is based — from the merits of the criminal case, *i.e.*, Pownall's potential guilt or innocence of the crimes charged. The reason for this is simple: a ruling in the DAO's favor on its constitutional issue would, quite literally, result in an after-the-fact judicial alteration of the substantive criminal law with which Pownall has been charged. As it now stands, it is not a crime when, while making an arrest, a peace officer uses deadly force under any of the four situations presented in Section 508. The DAO seeks to have the judiciary upend this status quo, by eliminating two of the four distinct grounds for justification crafted by the legislature. Doing as the DAO asks, however, would essentially criminalize conduct the General Assembly has deemed non-criminal. The DAO basically recognizes as much, but still insists there is a distinction between the terms "guilt" or "innocence" and the words "conviction" or "acquittal." *See* DAO's Brief at 14 (admitting Pownall's "conviction or acquittal might turn on the outcome

of this appeal" but suggesting its issue "does not turn on, or even consider, whether or not [he] is guilty"). The argument is nonsensical, and we reject it.

The waffling nature of the DAO's claim does not alter our conclusion. The DAO's motion in limine was styled as an attack on the trial court's potential use of Suggested Standard Jury Instruction (Crim) §9.508B. If that was the extent of the DAO's claim, such issue would fail to be separable from the merits because, by its very nature, a jury instruction must be based on evidence introduced at trial. *See supra* n.11.

Alternatively, if, as the DAO now purports, its issue is "only whether Section 508(a)(1) is facially unconstitutional[,]" DAO's Reply Brief at 1, its claim still would not be separable from the merits. "A statute is facially unconstitutional only where no set of circumstances exist[s] under which the statute would be valid." *Clifton v. Allegheny Cty.*, 969 A.2d 1197, 1222 (Pa. 2009) (citation omitted). "In determining whether a statute is facially invalid, courts do not look beyond the statute's explicit requirements or speculate about hypothetical or imaginary cases." *Germantown Cab Co. v. Phila. Parking Auth.*, 206 A.3d 1030, 1041 (Pa. 2019), *citing Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449-50 (2008); *see U.S. v. Raines*, 362 U.S. 17, 22 (1960) ("The delicate power of pronouncing [a statute] unconstitutional is not to be exercised with reference to hypothetical cases thus imagined."). As these standards plainly reflect, "facial challenges are generally disfavored." *Clifton*, 969 A.2d at 1223 n.37. They are also "the most difficult challenge to mount successfully[.]" *U.S. v. Salerno*, 481 U.S. 739, 745 (1987).

As noted, the DAO concedes there are some circumstances under which even the forcible felony and deadly weapon justifications could be applied constitutionally. Not only do these concessions essentially defeat the DAO's claimed facial challenge, *see, e.g.*, *Schall v. Martin*, 467 U.S. 253, 264 (1984) (a facial challenge fails where "at least

some" constitutional applications exist), they highlight the need here — even if we were willing to accept the DAO's most recent characterization of its claim as a facial challenge — to assess the evidence in the underlying case, for it's entirely possible the facts as ultimately developed may not give rise to the type of "unconstitutional situation" feared by the DAO. DAO's Brief at 21. *See, e.g.*, *Scott v. Harris*, 550 U.S. 372, 378, 382 (2007) (since *"Garner* did not establish a magical on/off switch that triggers rigid preconditions whenever an officer's actions constitute 'deadly force[,]'" the "first step in assessing the constitutionality of [an officer]'s actions is to determine the relevant facts"); *Graham v. Connor*, 490 U.S. 386, 396 (1989) ("proper application [of the reasonableness standard applied in *Garner*] requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight").[18]

---

[18] The dissent accepts the DAO's latest framing of its issue as a pure legal question divorced from the facts of Pownall's case. *See, e.g.*, Dissenting Op. at 13 ("This appeal poses the abstract question of whether a statute is unconstitutional."). From that vantage point, the dissent argues our decision herein creates tension with other cases from this Court and the United States Supreme Court which supposedly "held that constitutional issues nearly identical to the merits question in today's case are reviewable . . . under the collateral order doctrine." *Id.* at 4. We respectfully disagree. The appeals in the civil cases cited by the dissent were taken following motions for summary judgment and, as the dissent admits, involved "immunity-type defenses, which, unlike justification defenses, aim to exempt the individuals entitled to immunity from the burden of being haled into court and defending themselves in the first place." *Id.* at 12. *See Plumhoff v. Rickard*, 572 U.S. 765 (2014) (qualified immunity); *Brooks v. Ewing Cole, Inc.*, 259 A.3d 359 (Pa. 2021) (sovereign immunity); *Pridgen v. Parker Hannifin Corp.*, 905 A.2d 422 (Pa. 2006) (applicability of federal statute of repose for product liability claims against aircraft manufacturers under the General Aviation Revitalization Act, 49 U.S.C. §40101). Such orders are qualitatively different from what we have in this criminal case, in that they "conclusively determine whether the defendant is entitled to immunity from suit[,]" which "is both important and **completely separate** from the merits of the action[.]" *Plumhoff*,

Finally, if, as we believe, the true nature of the DAO's claim is an as-applied challenge, then its claim fails for precisely the same reason. *See, e.g.*, *Commonwealth v. Hairston*, 249 A.3d 1046, 1054 n.5 (Pa. 2021), *cert. denied sub nom.*, 142 S.Ct. 598 (2021) ("an as-applied challenge to the constitutionality of a statute [asserts] that the statute, even though it may generally operate constitutionally, is unconstitutional in a defendant's particular circumstances"). We find it appropriate to construe the DAO's claim in this manner for two reasons. First, the DAO did not raise a facial constitutional challenge until it came before this Court. *See* DAO's Reply Brief at 1 (asserting for the first time in this litigation that Section 508 "is facially unconstitutional"). Second, this treatment is most consistent with the High Court's Fourth Amendment jurisprudence in this arena.

Beginning with the latter point, we reiterate the High Court's instruction that in use-of-force cases the "first step in assessing the constitutionality of [an officer]'s actions is to determine the relevant facts." *Scott*, 550 U.S. at 378. This directive makes sense because "the 'reasonableness' inquiry in [such] case[s] is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."

---

572 U.S. at 772 (emphasis added). As discussed, the same is not true of the present challenge, rendering these cases easily distinguishable. And, since the dissent directs us to no other authority to support its proposed expansion of "the collateral order doctrine's reach [to] any Commonwealth appeal wherein it questions either the meaning of or the constitutional validity of a statutory defense[,]" Dissenting Op. at 3, we decline to adopt such a rule, as it would undermine the narrow approach favored by this Court and the United States Supreme Court with respect to collateral orders. *See, e.g.*, *Hafer*, 177 A.3d at 858 ("while our Court has diverged from the federal approach in some regards, we nonetheless construe the collateral order doctrine narrowly"); *Dig. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994) ("the 'narrow' exception should stay that way and never be allowed to swallow the general rule").

*Graham*, 490 U.S. at 397; *see Scott*, 550 U.S. at 383 ("in the end we must still slosh our way through the factbound morass of 'reasonableness'"). It is also exactly how the Court proceeded in *Garner*: it applied the Fourth Amendment's reasonableness test "to the use of a particular type of force in a particular situation" and held the officer's use of deadly force unjustified under those discrete facts. *Scott*, 550 U.S. at 382. But, importantly, the Court refused to declare even Tennessee's egregious statute **facially** unconstitutional. Instead, it explained that despite the statute's unconstitutional authorization of the use of deadly force, there remained the possibility that in other cases the facts might reveal the officer nevertheless possessed "probable cause to believe that the suspect pose[d] a threat of serious physical harm, either to the officers or to others[.]" *Garner*, 471 U.S. at 11. "As applied in such circumstances," the Court held, the "Tennessee statute would pass constitutional muster." *Id.* at 12.

This is instructive. Although the DAO and the dissent steadfastly maintain the facts are entirely irrelevant to our analysis, *see, e.g.*, DAO's Reply Brief at 7 (arguing no "factual analysis is required here"); Dissenting Op. at 15 (contending this "is not a case where further development of the record would enrich our assessment"), the relevant law suggests the exact opposite.[19] Our careful review of the High Court's Fourth Amendment jurisprudence — including *Garner*, the decision upon which the DAO's claim is grounded — reveals that the facts matter a great deal when confronting a use-of-force claim. So, in the absence of a clear intent on behalf of the DAO to raise a pure facial challenge from

_____

[19] Neither the DAO nor the dissent directs us to any case, from any jurisdiction, in which a court entertained a facial Fourth Amendment challenge to a statute authorizing the use of force. Although the High Court has indicated "facial challenges under the Fourth Amendment are not categorically barred" in some respects, *City of Los Angeles, Calif. v. Patel*, 576 U.S. 409, 415 (2015), the result in *Garner*, coupled with the Court's repeated admonition in cases like *Graham* and *Scott* that such claims are inherently fact bound, gives us pause and raises a serious question about whether a facial claim is even viable in this context. But we need not resolve this novel and prickly issue today.

the start, we believe the proper course is to treat the claim in the same way such claims were treated in *Garner* and its progeny.[20]

This brings us to the second and final point. As we have said, the first time the DAO expressed an explicit intent to launch a facial challenge to Section 508 was before this Court. This late-in-the-game substitution renders the DAO's current labeling of its claim dubious. Fortunately, "a litigant's characterization of an argument as being facial or 'as applied' is not controlling." *Warner ex rel. Warner v. Lawrence*, 900 A.2d 980, 989 n.10 (Pa. Cmwlth. Ct. 2006) (*en banc*). For the reasons we have discussed at length, we find the DAO's claim is best construed as an as-applied challenge, which necessarily requires consideration of "a defendant's particular circumstances." *Hairston*, 249 A.3d at 1054 n.5. As-applied constitutional challenges of this nature cannot surmount the collateral order doctrine's separability prong.

Because the DAO has failed to clearly prove its issue in this interlocutory appeal is entirely distinct from Pownall's potential guilt or innocence of the crimes charged, and

---

[20] It is worth noting both the DAO and the dissent fail to identify any case in which a court permitted a claim alleging a statute was facially unconstitutional to proceed on appeal by way of the collateral order doctrine. Our own research has likewise failed to reveal any. This is perhaps unsurprising since the Declaratory Judgments Act, 42 Pa.C.S. §§7531-7541, typically serves as the vehicle for making such challenges in the civil context, and in the criminal context, such claims ordinarily are raised by defendants, and thus would not be irreparably lost if postponed until after trial. This again highlights the atypical nature of this case, wherein the DAO is the party that purports to raise a facial challenge to a statute that the Commonwealth typically has a duty to defend. Given the peculiarities of the situation, it may be appropriate for the relevant Rules Committees to study this issue further, and to consider whether this Court should adopt some mechanism that would permit the Commonwealth the ability to contest more easily a statute's constitutionality. *See Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 113 (2009) ("[R]ulemaking, 'not expansion by court decision,' [is] the preferred means for determining whether and when prejudgment orders should be immediately appealable.") (citation omitted).

in accordance with our longstanding practice of construing the collateral doctrine order narrowly, we conclude the DAO's appeal is not authorized by Rule 313(b).[21]

### III. Conclusion

We recognize the DAO's fervent desire to put the troubling and recurring issue of police shootings in the spotlight. We agree the issue warrants serious examination, by every facet of government as well as those outside of it. But the proper forum for that debate is not an interlocutory appeal of a pretrial motion challenging a suggested jury instruction that might not even be applicable. Accordingly, we affirm the Superior Court's order quashing the DAO's unauthorized interlocutory appeal.

Chief Justice Baer and Justices Todd and Mundy join the opinion
Justice Dougherty files a concurring opinion.
Justice Wecht files a dissenting opinion in which Justice Donohue joins.
Former Justice Saylor did not participate in the consideration or decision of this matter.

---

[21] Contrary to the dissent's view, we do not hold "the Commonwealth will **never** be able to secure appellate review of a trial court's denial of a challenge implicating a statutory defense." Dissenting Op. at 3 (emphasis in original); *see id.* at 15-16 (suggesting the DAO's constitutional question "will remain unanswered" — "perhaps indefinitely" — "if we do not assess it here and now"). We merely resolve the limited jurisdictional question before us by holding the Commonwealth may not take an interlocutory appeal from an order denying a pre-trial motion regarding the use of potential jury instructions. Although there may be other ways to raise such a constitutional challenge, we have no occasion to consider those methods here given the DAO's chosen litigation strategy.